**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF FLORIDA**

**TALLAHASSEE DIVISION**

**DIOP KAMAU**

**Plaintiff**

**v.**

**JANAKAN THIAGARAJAH**

**Defendant**

_____/

**Case No.: 4:24-cv-207-AW/MAF**

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, ABUSE OF PROCESS, MALICIOUS PROSECUTION, AND TORTIOUS BUSINESS INTERFERENCE

INTRODUCTION

This action is brought by Plaintiff Diop Kamau against Defendant Janakan Thiagarajah for filing a malicious and improper lawsuit against Plaintiff on behalf of Gregory Slate based on claims already adjudicated and dismissed (4:2021cv00279). Defendant's actions have caused significant harm to Plaintiff's business, causing the suspension of Plaintiff's business YouTube account and, consequently, shutting down Plaintiff's nonprofit business activities. Plaintiff provides pro bono private investigative support to low and middle-income clients. Plaintiff's nonprofits also train disadvantaged students on civil rights investigations and provide internship scholarships to pay for their private investigative courses and licensing. Since 2015, Plaintiff's nonprofit has trained 10 licensed private

1



investigators. Five former interns are now law enforcement officials, including a former intern who is currently a prosecutor and a member of the US Attorney's office in Florida. Plaintiff's nonprofits have assisted the public with more than 15,000 complaints of police misconduct. Plaintiff's business has 8 active pro bono cases, which have stalled because of the Defendant's malicious lawsuits and for frivolous copyright claims. Plaintiff is banned from taking referrals directly from YouTube due to Defendant's actions.

Basis for Lawsuit Against Defendant Thiagarajah

This lawsuit is filed against Defendant Janakan Thiagarajah, the attorney representing Gregory Slate, due to his role in perpetuating baseless legal claims and knowingly presenting false information on behalf of his client. Despite the extensive record of Slate's prior misconduct, including perjury, evidence fabrication, and legal system abuse, Defendant Thiagarajah chose to pursue malicious litigation against Plaintiff at his client's request without probable cause or facts to support the allegations.

PARTIES

1. Plaintiff: Diop Kamau, a resident of Tallahassee, Florida, and the sole proprietor of the Police Complaint Center and Executive Director of the Equal Justice Project.

2. Defendant: Janakan Thiagarajah, an attorney and resident of the District of Columbia.

JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 as this case involves a federal question concerning civil rights violations and under 28 U.S.C. § 1332(a)(1) as the

matter in controversy exceeds $75,000 exclusive of interest and costs and is between citizens of different states.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred here.

FACTUAL BACKGROUND

5. On December 18, 2020, Defendant sued Plaintiff on behalf of his client, Gregory Slate (1:2020cv03732). The case was transferred to the northern district of Florida (4:2021cv00390). On May 25, 2023, in a Rule 11 hearing related to a counterclaim (4:2021cv00279) by Plaintiff, Judge Mark Walker denied Gregory Slate's motion for sanctions against Plaintiff, finding no basis for the claims.  At the hearing attorney Thiagarajah gave false testimony on a material matter related to his client's ownership of a YouTube account:

On May 25, 2023 during the Rule 11 sanctions hearing Plaintiff witnessed misconduct by Defendant's attorney, Janakan Thiagarajah. Plaintiff reported a complaint to the Florida Bar regarding the observed misconduct, which included an allegation that attorney Thiagarajah testified falsely under oath on behalf of his client and that attorney Thiagarajah allowed his client Gregory Slate to testify falsely under oath during a January 16, 2023 deposition. Both allegations are true. Contrary to the answer attorney Thiagarajah gave to the Court, his client owns two YouTube accounts, @gSlate and TPD Justice.

  - May 25 Court Hearing

- Judge Walker's Question: "I'm asking a different question. Which is YouTube? Let's start I guess baby steps. Did the Defendant Mr. Slate actually have a YouTube channel in July of 2020? That's either something that's true or not true?"

- Answer Attorney Thiagarajah: "Not that I'm aware of? Not that I'm aware of and take this and say no."

- Judge Walker's Question: "Alright so that then answers my question which is Judge there's no way my client could have published anything from the Police Complaint Center. Lawfully or unlawfully couldn't have done it because he did not have a YouTube channel in July of 2020. However, he got it even if he had it he couldn't have published it on the YouTube channel didn't even have one in July of 2020. Correct?"

- Answer Attorney Thiagarajah: "That's correct."

After testifying and consulting with his client, Attorney Thiagarajah failed to correct the record or notify the court about the misleading testimony.

6. Despite the Court's denial of his motion as baseless, Defendant Thiagarajah, representing Slate, filed a new lawsuit in the District of Columbia on January 18, 2024, Case No.: 2024-CAB-000354, reasserting the same claims of malicious prosecution, which had already been settled, and adding a new claim of defamation over a letter Plaintiff sent to Judge Mark Walker. In the new legal filing, attorney Thiagarajah does not include a copy of Plaintiff's letter in his legal complaint. At a May 15, 2024, hearing, Defendant told the court that he had no evidence and declined to enter evidence into the record to support his defamation claim.

7. Plaintiff had previously filed a complaint with the Florida Bar regarding Defendant's misconduct during the May 25, 2023, hearing, including false testimony and failure to correct misleading statements.  The Florida Bar recommended that Plaintiff contact the Judge and report the observed misconduct. On June 3rd, 2023, Plaintiff wrote a letter to Judge Walker describing the misconduct and requesting an investigation. Judge Walker did

4

not respond to the request directly but entered the letter into the Pacer record. Weeks later,

he issued this warning to the parties:

**The parties should take note. This Court is deeply troubled by the lawyers'**

**conduct in this case and the companion case, particularly the casual accusations of**

**misrepresentations by opposing counsel. There are tools at this Court's disposal to**

**address such accusations, including to refer individuals to the United States**

**Attorney's Office if this Court determines that someone has lied under oath or to**

**contact counsel's respective Bar to refer them for unprofessional conduct— including**

**misrepresenting the facts or law to this Court or making baseless accusations of such**

**misrepresentations. The parties and their lawyers are on notice that this Court will not**

**tolerate unprofessional and unethical conduct by litigants or their lawyers, and thus,**

**they should act accordingly.**

**SO ORDERED on August 18, 2023.**

**s/Mark E. Walker _____**

**Chief United States District Judge**

Defendant was sanctioned for discovery violations twice before this warning. The discovery

violations mirror violations by Defendant's client causing him to lose his law license.

8. On January 10, 2024, Plaintiff's, insurance carrier accepted a settlement offer to resolve

the claim filed in 2020 by attorney Thiagarajah for $150,000. However, Defendant

Thiagarajah filed a second defamation lawsuit in bad faith shortly after, splitting the claims solely for harassment.

9. On February 10, 2024, Slate received the $150,000 settlement payment. Five days later, Plaintiff was served with the new lawsuit alleging defamation.

10. The letter Plaintiff wrote to Judge Walker, which attorney Thiagarajah claims is defamatory, was a factual account of the observed misconduct by Defendant Thiagarajah and Slate during the hearing. The letter was neither published by Plaintiff nor intended to defame but was instead an official communication required by the Florida Bar.  Attorney Thiagarajah filed the new lawsuit in retaliation for the reported complaint to Judge Walker. The allegations of defamation against Plaintiff are unfounded, given his client's documented history of false statements under oath and legal misconduct.

11. Over the past five years, Defendant Thiagarajah has harassed Plaintiff's business, the Police Complaint Center, by filing numerous frivolous and baseless copyright claims on behalf of his client, Gregory Slate.

12. Starting around February 15, 2024, Defendant Thiagarajah repeatedly filed copyright claims in conjunction with Slate on content that did not belong to them. These actions were intended to disrupt and damage Plaintiff's business operations.

EXTENSIVE RECORD OF GREGORY SLATE'S PRIOR PERJURY AND LEGAL MISCONDUCT

Attorney Janakan Thiagarajah has filed a patently frivolous and bad-faith lawsuit alleging that Gregory Slate's reputation was damaged by accusations of perjury. This claim is not

6

only without merit but preposterous and laughable in light of the overwhelming evidence of Slate's misconduct, detailed in multiple court rulings and testimonies.

The Maryland Court of Appeals and Judge Beryl Howell have both extensively documented Gregory Slate's pattern of dishonesty, fraud, and abuse of the judicial process. As noted by the Maryland Court of Appeals:

**"This attorney discipline proceeding involves a lawyer who knowingly failed to disclose during the bar application process that, in a civil case to which the lawyer was a party, a trial court found that the lawyer had engaged in dishonesty and misconduct, and the lawyer falsely stated to Bar Counsel that he had disclosed all required information during the bar application process".**

Specific Incidents of Misconduct

1. Fabrication of Evidence and Perjury:

In a case concerning alleged copyright infringement, the trial court found that Slate "fabricated a letter and submitted it to the trial court in bad faith; gave deposition testimony that was either perjurious or, at least, intentionally misleading; and repeatedly attempted to abuse the discovery process, and providing voluminous irrelevant and misleading materials".

2. Misrepresentation of Address and Employment:

Gregory Slate consistently denied his association with the address 1220 L Street NW, Washington, DC, and his involvement with the Police Complaint Center, despite clear evidence to the contrary.

- 2011 Feb. 25, 2011 Deposition with ABC News :

Question:

Q. Okay. Do you recall filing the pro se lawsuit against Alyson Haydel?

A. No.

Q. Okay. Do you see the address listed for Gregory A. Slate in this docket sheet? Do you see that?

A. No.

Q. Does that read 1220 L Street?

A. Does what read 1220 L Street?

Q. The address. Plaintiff, Gregory A. Slate, 1220 L Street, do you see that?

A. I see at one point on the document Gregory A. Slate. I see at another point on the document 2450 E-U-T-A-W Place, Baltimore, Maryland, 21217.

- 2011 Deposition with ABC News:

Question:

Q. Did you receive mail at that address, 1220 L Street, Northwest, suite 100-164?

A. I don't recall.

Q. Really? You don't remember if you ever received e-mail or mail at that address?

A. I don't recall. I answered the question.

- 2011 Deposition with ABC News:

Question:

Q. Do you know what 1220 L Street, Suite 100-164, is?

A. I don't recall. I don't know.

Q. Did you ever know?

A. I don't recall.

Q. Is that an address used by the Police Complaint Center?

A. Again, I would ask that you define "address" and "used" and "Police Complaint Center."

Q. Do you know what the Police Complaint Center is, Mr. Slate?

A. No.

Q. Have you ever identified yourself as working with the Police Complaint Center?

A. Don't recall.

Q. Do you know who Diop Kamau is?

A. Yes.

4. Lies to the Maryland Court of Appeals and Counsel:

Slate's dishonesty extended to his bar application and interactions with Bar Counsel. He falsely stated that he had disclosed all required information during the bar application process, a lie that was uncovered during subsequent investigations.

**- Maryland Court of Appeals:**

**"Before becoming a member of the Bar of Maryland, Gregory Allen Slate, Respondent, initiated a civil case concerning alleged copyright infringement, claiming that hidden camera footage that he had recorded was used without his authorization. The trial court dismissed the case on the ground that Slate had engaged in bad-faith litigation conduct. The trial court found that Slate: fabricated a letter and submitted it to the trial court in bad faith; gave deposition testimony that was either perjurious or, at least, intentionally misleading; and repeatedly attempted to abuse the discovery process through such actions as attempting to fraudulently collect evidence, providing discovery materials in a soiled envelope that strongly smelled of excrement, improperly videotaping his own deposition testimony, and providing voluminous irrelevant and misleading materials".**

5. Continued Lies in 2023:

Slate's pattern of dishonesty continued well beyond his disbarment. In his 2023 deposition, Slate continued to lie about his actions and associations.

False Testimony and Proof of Misconduct Regarding Excrement

Gregory Slate's 2023 Deposition Testimony

Question and Answer Sequence:

Q. And then, as far as within the ABC News litigation, was there an allegation within that case, by an attorney that was involved in that case, regarding some sort of a package or a box that contained excrement?

A. I don't think that that was the allegation.

Q. Do you recall an affidavit submitted in the ABC litigation where it was alleged that you showed up at an office with the box, and that when it was opened, the people that opened it believed it to be excrement?

A. Do I recall what?

Q. Do you recall an affidavit submitted in the ABC litigation where it was alleged that you showed up at an office with the box, and that when it was opened, the people that opened it believed it to be excrement?

A. I'd have to see the whole document.

Q. Have you ever delivered a box containing excrement to a law firm?

A. No.

Q. Okay. But have you ever been accused of delivering a box that contained a substance that the person who received the box believed to be excrement within a litigation? Has that accusation ever been lodged against you within a litigation?

A. I mean, the way that you're characterizing it, I don't think that that's the allegation. I don't think that's an accurate reflection of an allegation that was made. I think that any allegations that were made are reflected in their pleadings.

Q. You're familiar with the allegation from within that case that there was a situation where there was a box delivered where it was alleged that the box contained excrement?

A. I don't think that is an accurate restatement of the allegation as it was made. And I think that the best representation of the allegation that was made is whatever the allegation was as printed on their papers as filed with the court.

Quote from Judge Howell's Ruling:

- "The trial court found that Slate: fabricated a letter and submitted it to the trial court in bad faith; gave deposition testimony that was either perjurious or, at least, intentionally misleading; and repeatedly attempted to abuse the discovery process through such actions as attempting to fraudulently collect evidence, providing discovery materials in a soiled envelope that strongly smelled of excrement."

Conclusion

Gregory Slate's false testimony regarding the excrement allegation is clearly contradicted by the evidence and judicial findings. Judge Howell's ruling provides substantial proof that

Slate lied under oath about this incident, further demonstrating his pattern of deceit and misconduct in the legal process.

Use of Jonathan Johnson's Identity: Detailed Analysis of Fraudulent Activities

ABC's investigation revealed that Slate had used his brother Jonathan Johnson's identity to send emails and fabricate documents. By tracing the IP addresses associated with these emails, ABC demonstrated that they originated from Slate's known locations and devices, further implicating him in identity fraud.

Fabrication of Evidence:

Slate submitted a letter to the court purportedly from a third party, but forensic analysis revealed inconsistencies in the document's creation and metadata, proving it was manufactured by Slate himself. This evidence of fraud was pivotal in the court's decision to dismiss Slate's case and sanction him for his misconduct.

Misrepresentation of Address:

Despite Slate's denials, evidence showed that he used the address 1220 L Street NW for professional communications and legal documents. This address was linked to multiple activities related to the Police Complaint Center, contradicting Slate's sworn statements.

Gregory Slate: Serial Litigant and Fraudster

Gregory Slate is a serial litigant and fraudster who had amassed almost 100 personal cases in civil and criminal courts before obtaining his law license. He later lost it because he was caught lying again. Two years into his law practice, he began receiving complaints from

other lawyers. in addition to his legal misconduct, he has half a dozen arrests for serious crimes. He failed to disclose all of this in his bar application in the catchall question and in other questions by Bar Counsel.

Maryland Court of Appeals Findings:

"Slate signed his bar application, which included his responses to the Character Questionnaire. At the time, Question 11(a) of the Character Questionnaire stated: 'The following is a complete list of all suits in equity, actions at law, administrative proceedings, suits in bankruptcy or other statutory proceedings, civil citations, matters in probate, lunacy, guardianship, and every other judicial proceeding of every nature and kind, except divorce or criminal proceedings, to which I am or have been a party (If "None," so state).' Slate responded 'No' to Question 18, the catchall question, which stated as follows: 'Have there been any circumstances or unfavorable incidents in your life, whether at school, college, law school, business or otherwise, which may have a bearing upon your character or your fitness to practice law, not called for by the questionnaire or disclosed in your answers?' By responding 'No' to Question 18, Slate intentionally failed to disclose material information that reflected adversely on his character".

 Impact on the Judicial System

The continuous and egregious misconduct by Gregory Slate poses a significant threat to the integrity of the judicial system. When an individual like Slate can repeatedly lie and manipulate the legal process without facing immediate and severe consequences, it undermines the rule of law. It erodes public trust in the legal system. While necessary, the

disbarment of Gregory Slate has not deterred him from continuing his dishonest behavior, as evidenced by his recent depositions.

Conclusion

Given this well-documented history of fraud, perjury, and misconduct, any claim that Slate's reputation has been damaged by accusations of perjury is frivolous and brought in bad faith. The overwhelming evidence, as noted by multiple courts, clearly demonstrates Slate's extensive pattern of deceit. As the Maryland Court of Appeals succinctly put it, Slate "repeatedly attempted to abuse the discovery process" and engaged in "dishonesty and misconduct."

In light of these facts, Attorney Janakan Thiagarajah's lawsuit is without merit and an abuse of the judicial process intended to harass and burden Plaintiff.

13. Plaintiff incorporates by reference the extensive record of Gregory Slate's prior perjury and legal misconduct, as detailed in prior judicial findings, including but not limited to:

  - Fabrication of Evidence: In Slate v. American Broadcasting Companies Inc., 941 F. Supp. 2d 27 (D.D.C. 2013), Slate was found to have fabricated evidence, including a letter purportedly sent to an ABC News producer.

  - Perjury: Slate provided false testimony under oath in multiple legal proceedings.

  - Abuse of Discovery Process: Slate engaged in fraudulent collection of evidence, improper videotaping of depositions, and submission of misleading materials.

Dishonesty: The Maryland Court of Appeals disbarred Slate for professional misconduct, including failing to disclose pertinent information during the bar application process and engaging in dishonesty and misconduct in civil litigation.

- Misuse of Legal System: Slate repeatedly initiated legal actions to interfere with Plaintiff's business and personal life, leveraging the courts to manufacture fraudulent claims.

SUMMARY OF FALSE STATEMENTS AND PERJURY BY GREGORY SLATE REGARDING 1220 L ST. NW, WASHINGTON DC

False Statements:

- Address Usage:

Gregory Slate falsely testified that 1220 L St. NW, Washington DC was Diop Kamau's address, when in fact it was Slate's business address. Multiple documents, including phone bills, credit bills, and tax records, confirmed that 1220 L St. NW was Slate's business address.

- Employment and Association with PCC:

Slate denied extensive involvement with the Police Complaint Center (PCC) and minimized his role, claiming to be a periodic contractor. In some instances, he claimed to be a part-time volunteer, while in others, he denied any significant involvement. These inconsistencies were highlighted in various testimonies and contradicted by emails and affidavits from ABC employees and producers. Documents showed he was the executive

director of the PCC, and there were numerous communications and financial records proving his significant role and extensive involvement with the PCC.

Proof of Lies by ABC:

- Email Evidence:

ABC presented emails from Slate's personal University of Maryland account, which matched those presented in the ABC case, confirming his significant involvement with the PCC contrary to his testimony. These emails showed extensive communication and coordination related to PCC activities, further proving his false statements and perjury.

Judge Howell's ruling confirmed the authenticity of the emails and documents presented by ABC, which contradicted Slate's testimony. This ruling was pivotal in establishing Slate's falsehoods and acts of perjury in court.

SUMMARY OF FALSE STATEMENTS AND PERJURY BY GREGORY SLATE REGARDING FORGING A LETTER CLAIMING TO BE AN EMMY AWARD-WINNING JOURNALIST

False Statements:

- Claiming Emmy Award:

Gregory Slate falsely claimed to be an Emmy award-winning journalist. This was reflected in a forged letter and his testimonies, where he presented himself as such to enhance his credibility and professional standing to distance himself from the Police Complaint Center. Slate claimed to be a freelance journalist and testified that Plaintiff and ABC News stole his work. In depositions, Slate falsely testified under oath about his credentials, including

claiming to be an Emmy award-winning journalist. This false testimony constitutes perjury, as it was given with the intent to deceive the court and other parties involved in the litigation. This act of forgery and the subsequent use of the letter in legal proceedings and professional contexts is a clear act of perjury and fraud. Judge Howell confirmed that the letter submitted by Slate was forged and that his claims about the Emmy award were false. These rulings were instrumental in establishing Slate's prior acts of perjury and fraud.

SUMMARY OF FALSE STATEMENTS AND PERJURY BY GREGORY SLATE REGARDING THE USE OF JONATHAN JOHNSON'S ID AND EMAILS

Slate provided false testimony under oath, denying the use of Jonathan Johnson's ID and emails for various fraudulent activities. This constitutes perjury as these statements were made to mislead the court. Slate submitted false evidence to support his claims, further perpetuating the perjury. He provided documents and statements under oath denying his involvement in any fraudulent activities using his brother's identity. ABC obtained receipts showing Slate used Jonathan Johnson's credit card for purchases, including a hidden camera and flight tickets. These purchases were made just a few months before Slate registered the website diopkamau.com using his brother's identity. Slate used the site to post smears against Plaintiff's business.

- Emails and IP Address Tracking:

ABC located IP addresses linked to Slate, showing that he used Jonathan Johnson's email account (jk@umd.edu) to manufacture evidence for the ABC case. The IP addresses were traced back to locations associated with Slate, proving that he accessed and used his

18

brother's email account. This technical evidence was crucial in proving Slate's impersonation and fraudulent use of his brother's identity. The receipts, emails, and IP address analysis provide irrefutable evidence of Slate's fraudulent activities using his brother's identity. These documents disprove Slate's defamation claims by showing clear and convincing proof of his actions relating to statements made in Plaintiff's letter to Judge Walker. There is substantial proof that Defendant's client testified falsely in multiple depositions.

COUNT I: Declaratory Judgment

25. Plaintiff Kamau repeats and re-alleges paragraphs 1 through 24 as if fully set forth herein.

26. Plaintiff seeks a declaratory judgment that the content produced by Plaintiff and claimed by Defendant Thiagarajah is not subject to Defendant's copyright claims and is lawfully owned and used by Plaintiff.

COUNT II: Injunctive Relief

27. Plaintiff Kamau repeats and re-alleges paragraphs 1 through 26 as if fully set forth herein.

28. Plaintiff requests an injunction requiring Defendant Thiagarajah to withdraw all pending copyright claims against Plaintiff's content and prohibiting Defendant from filing further claims without Court approval.

COUNT III: Abuse of Process

29. Plaintiff Kamau repeats and re-alleges paragraphs 1 through 28 as if fully set forth herein.

30. Defendant Thiagarajah filed a frivolous lawsuit alleging defamation based on a letter written by Kamau to Judge Walker.

31. The defamation lawsuit was filed with ulterior motives including harassment and retaliation against Plaintiff Kamau for reporting observed misconduct to the Court as the Florida Bar Association instructed.

32. The defamation lawsuit lacks merit and was intended to misuse the legal process to intimidate and burden Plaintiff Kamau.

33. The lawsuit's filing constitutes an abuse of process because it was filed not to seek justice but to harass and retaliate against Plaintiff Kamau.

COUNT IV: Malicious Prosecution

34. Plaintiff Kamau repeats and re-alleges paragraphs 1 through 33 as if fully set forth herein.

35. Defendant Thiagarajah initiated and continued a defamation lawsuit against Plaintiff Kamau without probable cause.

36. The defamation lawsuit was filed with malice as evidenced by the timing and circumstances of its filing including the fact that it was filed while Judge Walker was hearing an existing defamation claim for the same claims. In their lawsuit Defendant Thiagarajah purposely misquoted Judge Walker in their filings to mislead the DC court

about Plaintiff's mental health alleging statements that Judge Walker never made. In Defendant's legal filing he states the following was said by Judge Walker:

- "At the final hearing the presiding judge questioned aloud if Defendant Kamau might be 'delusional.'"

- The following is what Judge Walker actually said just before he ruled against Defendant's motion for sanctions. The fact that the claims have already been adjudicated further proves Defendant's malice in filing a frivolous lawsuit.

- May 25 2023 Judge Walker:

- "What I have before me is rather limited. But I must say while I don't know whether Mr. Kamau's computer was or wasn't hacked whether he sincerely believes it was hacked or is delusional that it was hacked I can't really make that judgment based on what is in front of me. What is in front of me and what I did find to be credible is that Mr. DellaRusso interviewed Mr. Kamau at length he had multiple associates to do it before he would agree to take the case. What I did find credible and what is on this record is that Mr. DellaRusso was not willing just to accept his client's word because I absolutely agree with counsel for the defense that you just can't have your client come in and tell you this is what happened and immediately file a lawsuit. That's the law that would be reckless that would be wrong. But here that's not what happened. I credit the testimony of the plaintiff in this regard namely that his lawyer did inquire and engage in a thorough vetting of his claims not just for himself but hours with his associates."

COUNT V: Fraudulent Copyright Claims

38. Plaintiff Kamau repeats and re-alleges paragraphs 1 through 37 as if fully set forth herein.

39. Defendant Thiagarajah filed multiple fraudulent copyright claims against Plaintiff's website and business causing significant disruption and financial loss.

40. These copyright claims were already settled by Judge Howell who ruled that Slate had no valid copyright claims under the "work for hire" doctrine.

41. Defendant's actions were intended to harass and financially burden Plaintiff Kamau leading to severe disruptions in his business operations.

COUNT VI: Tortious Business Interference

42. Plaintiff Kamau repeats and re-alleges paragraphs 1 through 41 as if fully set forth herein.

43. Defendant Thiagarajah intentionally and unjustifiably interfered with Plaintiff Kamau's business relationships and prospective business relationships by filing multiple fraudulent copyright claims.

44. Defendant was fully aware that the copyright claims were bogus and had been settled by Judge Howell's prior ruling in the ABC case.

45. The fraudulent copyright claims disrupted Plaintiff Kamau's YouTube account and business relationship with YouTube which was essential for his nonprofit and private investigative operations.

22

46. The interference caused significant financial harm to Plaintiff Kamau including the inability to monetize curated videos and the loss of business opportunities and interns' assignments.

47. Defendant's actions were willful malicious and intended to cause harm to Plaintiff Kamau's business.

COUNT VII: Perjury

48. Plaintiff Kamau repeats and re-alleges paragraphs 1 through 47 as if fully set forth herein.

49. Defendant Thiagarajah's client provided false testimony in multiple depositions as documented in the January 16, 2023 deposition, where he testified as follows:

  - Attorney Mike Rutledge Question 1: "Okay. Have you ever used Mr. Johnson's identification?"

  - Gregory Slate Answer: "No."

  - Slate impersonated his brother by using Jonathan Johnson's email address to send communications under false pretenses. For instance, Slate registered online for an account with ABC News Video Source using his own name and email. Subsequently, he sent an email from Jonathan Johnson's University of Maryland email address to an ABC employee posing as an interested party seeking to license footage. This email was part of a broader scheme to generate and use fabricated evidence in his legal battles.

- Attorney Mike Rutledge Question 2: "I mean I'm asking about the guts of the message (Slate's Resignation Letter) though that appears to be a message from you—or from an email address that appears to be associated with the name Greg Slate and it says 'Per Tyra's request I am at the bank removing myself from the new bank account and adding you. You will need to go into the bank in Tallahassee and sign the paperwork.' Do you ever remember a situation with a bank and Mr. Kamau and having to do a task like that where you removed yourself from an account?"

- Gregory Slate's Answer: "No. And another reason that I don't think that this is accurate is because I don't think I was sending emails from my phone at that time."

Judge Howell confirmed the authenticity of emails from Slate's gslate@policeabuse.org account, including the resignation letter. These emails matched those found in Slate's University of Maryland account, corroborating their authenticity.

PRAYER FOR RELIEF

WHEREFORE Plaintiff Kamau respectfully requests that this Court:

A. Issue a declaratory judgment in favor of Plaintiff Kamau;

B. Grant an injunction requiring the immediate withdrawal of Defendant Thiagarajah's copyright claims and restraining Defendant from further claims without Court approval;

C. Award Plaintiff Kamau compensatory damages in an amount to be determined at trial;

D. Award Plaintiff Kamau punitive damages in an amount to be determined at trial;

E. Award Plaintiff Kamau costs incurred in this action;

F. Refer Defendant Thiagarajah to the bar association for investigation regarding his conduct in this litigation;

G. Refer Defendant Thiagarajah and his client Gregory Slate to the U.S. Attorney's Office for an investigation into potential perjury and other legal misconduct, considering Slate's prior record of legal misconduct.

H. Grant such other and further relief as this Court deems just and proper.

DEMAND FOR JURY TRIAL

Plaintiff Kamau demands a trial by jury on all issues that are so triable.

Respectfully submitted,


/s/ Diop Kamau

9217 Hampton Glen Court

Tallahassee, FL 32312

Email: diopkamau@policeabuse.com

Phone: 850-566-7960

Plaintiff Pro Se