# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**DIOP KAMAU,**

   *Plaintiff,*

v.                                    **Case No.: 4:24-cv-207-**
                                      **AW/MAF**

**JANAKAN THIAGARAJAH, BELLWETHER LAW FIRM INC.,**

   *Defendants.*

_____/

## SECOND AMENDED COMPLAINT FOR DAMAGES, ABUSE OF PROCESS, MALICIOUS PROSECUTION, AND TORTIOUS BUSINESS INTERFERENCE

## INTRODUCTION

1. Plaintiff is a pro se litigant.

2. On May 13, 2024, Plaintiff filed a lawsuit seeking an injunction against

Gregory Slate for fraudulent copyright claims.

3. Defendant Slate evaded service of process. (Exhibit 1: Affidavit from

Process Server) The actions of Slate, combined with his counsel's knowledge

1

and support, led to an amended complaint, including his attorney, Janakan Thiagarajah, and Bellwether Law Firm Inc.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

5. This Court also has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Copyright Act, 17 U.S.C. § 101 et seq.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

7. Plaintiff is a retired, decorated former law enforcement official who developed a testing method for police misconduct complaints in 1990.

8. Plaintiff founded the Police Complaint Center to evaluate police officer responses to citizen misconduct complaints. The Police Complaint Center

conducts undercover investigations, provides training for law enforcement agencies, and supports individuals filing complaints against police officers. Its work is vital for promoting accountability and improving police-community relations.

9. Between 2005 and 2007, Plaintiff's business, the Police Complaint Center, was contracted by ABC News to produce a news report using Plaintiff's testing methodology. Plaintiff was simultaneously contracted as a consultant for Plaintiff's expertise. Under these contracts, Plaintiff was paid approximately $10,000 to conduct a series of tests nationwide. (Exhibit 2: Invoices and Payments from ABC)

10. These stories aired on several ABC affiliates locally and nationally on the broadcast 20/20.

11. A former employee, Gregory Slate, was terminated for misconduct in 2007.

12. Slate's subsequent lawsuit against ABC News (Case No. 1:09-cv-01761-BAH) for video content ownership was dismissed, with the Court noting his

perjury and misconduct.[1] Attorney Thiagarajah knew that his client Gregory Slate was disbarred in 2018 for the litigation misconduct in the ABC case. Attorney Thiagarajah also knew his client's legal misconduct included using the courts for witness intimidation and fraudulent charges. Nevertheless, attorney Thiagarajah has assisted Mr. Slate in repeatedly filing fraudulent copyright claims against Plaintiff's work and videos.

13. Plaintiff has the right to use the investigative footage recorded by the Police Complaint Center for police training and public consumption, conforming with Plaintiff's agreements with ABC News affiliates and ABC National News. (Exhibit 3: Declarations from ABC Employees)

**IMPACT OF FRAUDULENT COPYRIGHT CLAIMS AND YOUTUBE SHUTDOWN**

14. In 2020, Defendant Thiagarajah's client, Gregory Slate, published Plaintiff's videos on his personal YouTube account @gslate, forcing Plaintiff to file multiple copyright claims seeking their removal. YouTube removed the videos

---

[1] Judge Howell found Slate's conduct to include perjury, fabrication of evidence, and other bad-faith litigation practices. This justified the dismissal of his lawsuit (ABC Case No. 1:09-cv-01761-BAH).

from Thiagarajah's client's account after Greg Slate failed to file a response asserting ownership. Plaintiff also filed a lawsuit. When the lawsuit ended before trial at Plaintiff's direction, Attorney Thiagarajah filed a motion for sanctions, claiming abuse of process, vexatious litigation, and other claims.

15. During a sanctions hearing on May 25, 2023, Attorney Thiagarajah falsely stated that Slate did not own a YouTube account. Separately, Slate provided false testimony in multiple depositions, including a deposition on January 16, 2023, where he falsely testified about using his brother's identity, sending or delivering feces to opposing counsel, his relationship to the Police Complaint Center, and owning, using, or accessing a Police Complaint Center checking account.

16. When someone files over three YouTube copyright complaints against a user, it can trigger an automatic shutdown of the targeted user's account, even if the claims are bogus.

17. Defendant Thiagarajah, through Bellwether Law Firm Inc., assisted his client in presenting a fraudulent claim of copyright ownership. Because he is an attorney and had his law office listed in many of his communications, it elevated the perceived legitimacy of the false claims.

18. As a result, Plaintiff's YouTube account was shut down. This account was critical to Plaintiff's business operations, including disseminating training materials and public education videos produced by the Police Complaint Center.

19. The shutdown of Plaintiff's YouTube account prevented Plaintiff from releasing documentary films about Plaintiff's work, which were expected to generate substantial revenue.

20. The suspension disrupted ongoing projects, caused income loss, and damaged Plaintiff's business's reputation.

21. Plaintiff received an email from YouTube advising that Plaintiff's account was disabled due to the multiple claims filed by Defendant Thiagarajah and his client. (Exhibit 5: Email from YouTube)

**MISCONDUCT BY DEFENDANTS**

22. Plaintiff reported this misconduct to the Florida Bar and Judge Walker. (Exhibit 4: Letter to Judge Walker) In retaliation, Defendant Thiagarajah filed a baseless defamation lawsuit against Plaintiff. This retaliation was intended to intimidate and punish Plaintiff for reporting his unethical conduct.

6

Thiagarajah's baseless defamation lawsuit was dismissed on July 19, 2024, for lack of evidence and jurisdictional issues.

23. The claim in the lawsuit that Thiagarajah's client's reputation was harmed is false. Plaintiff's allegation that Attorney Thiagarajah allowed his client to testify falsely and made false statements under oath on behalf of his client is true.

24. Thiagarajah made several blatant and deliberate misrepresentations to the Court, including the false claim that a judge questioned Plaintiff's sanity and other false and reckless statements.

25. Attorney Thiagarajah allowed Mr. Slate to receive and send messages from a Bellwether Law Firm Inc. email account. IP address records will demonstrate that Gregory Slate has been responding to meet-and-confer conferences, drafting documents, writing responses to legal issues, and submitting them directly to Pacer, bypassing his lawyer, Attorney Thiagarajah.

26. Thiagarajah knew his client did not own the videos he filed claims against. In 2009, Slate filed a lawsuit against ABC News, claiming ownership of the

same footage he now claims through fraudulent copyright claims.[2] He forged a letter to inflate his negotiating position and to distance himself from the Police Complaint Center, which was Plaintiff's business, where he worked when the video was filmed. This previous attempt to steal Plaintiff's videos through copyright fraud was known to his attorney, Janakan Thiagarajah. (Exhibit 6: Forged Letter)

## VIOLATIONS OF RULES OF PROFESSIONAL CONDUCT

27. The actions of Attorney Thiagarajah and Bellwether Law Firm Inc. likely violated the following five Rules of Professional Conduct:

1. Rule 3.3: Candor Toward the Tribunal: Thiagarajah failed to correct false statements of material fact made to the tribunal and knowingly made false statements.

---

[2] Judge Howell noted that equitable estoppel applied because Slate consistently represented himself as an agent of the PCC. ABC relied on these representations to their detriment by spending significant resources and compensating the PCC. Slate was, therefore, estopped from asserting personal ownership over the footage (Case No. 1:09-cv-01761-BAH).

2. Rule 3.4: Fairness to Opposing Party and Counsel: Thiagarajah assisted his client in presenting false evidence and made frivolous claims to harass and maliciously injure the opposing party.

3. Rule 4.1: Truthfulness in Statements to Others: Thiagarajah made false statements of material fact to third parties.

4. Rule 5.5: Unauthorized Practice of Law; Multijurisdictional Practice of Law: Thiagarajah allowed his client, Gregory Slate, to operate in a legal capacity without a license under his name.

5. Rule 8.4: Misconduct: Thiagarajah engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and engaged in conduct that is prejudicial to the administration of justice.

**CLAIMS FOR RELIEF**

COUNT I: Abuse of Process

28. Plaintiff repeats and re-alleges paragraphs 1 through 27.

29. Defendants Thiagarajah, Bellwether Law Firm Inc. and their client Gregory A. Slate filed a frivolous defamation lawsuit to harass and retaliate against Plaintiff.

30. The lawsuit constitutes an abuse of process intended to burden Plaintiff.

## COUNT II: Malicious Prosecution

31. Plaintiff repeats and re-alleges paragraphs 1 through 30.

32. Defendants Thiagarajah, Bellwether Law Firm Inc., and their client Slate initiated a defamation lawsuit without probable cause and with malice.

33. The lawsuit was filed to mislead the Court and harass Plaintiff.

## COUNT III: Fraudulent Copyright Claims

34. Plaintiff repeats and re-alleges paragraphs 1 through 33.

35. Defendants Thiagarajah, Bellwether Law Firm Inc., and Slate filed multiple fraudulent copyright claims, causing financial loss and disruption.

## COUNT IV: Tortious

 Business Interference

36. Plaintiff repeats and re-alleges paragraphs 1 through 35.

37. Defendants intentionally interfered with Plaintiff's business relationships by filing fraudulent copyright claims.

38. The interference caused significant financial harm to Plaintiff's business.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kamau respectfully requests that this Court:

A. Award compensatory damages of at least $3,000,000.

B. Award punitive damages.

C. Award costs incurred in this action.

D. Refer Defendants Thiagarajah and Bellwether Law Firm Inc. to the Office of Disciplinary Counsel.

E. Refer Defendant Thiagarajah and Gregory Slate to the U.S. Attorney's Office to investigate potential perjury and legal misconduct.

F. Grant such other and further relief as the Court deems just and proper.

DEMAND FOR JURY TRIAL

Plaintiff Kamau demands a trial by jury on all issues that are so triable.

## EVIDENCE EXHIBIT LIST

1. Affidavit from Process Server: An affidavit from the process server who spoke with Gregory Slate and obtained his commitment to accept the subpoena, which he later reneged on.

2. Invoices and Payments from ABC: Detailed invoices and payment records from ABC News confirming the contract and payments made for the investigative reports.

3. Declarations from ABC Employees: Sworn declarations from ABC employees corroborating the contract and the work performed under the contract.

4. Letter to Judge Walker: A copy of the letter sent to Judge Walker reporting the misconduct of Defendants Thiagarajah and his client, Gregory Slate.

5. Email from YouTube: An email received from YouTube advising that Plaintiff's account was being disabled due to the multiple claims filed by Defendants Thiagarajah and his client.

6. Forged Letter: A backdated forgery Slate repeatedly presented by Slate a backdated forgery as authentic in Court to distance himself from the Police Complaint Center and advance a fraud to steal credit for Plaintiff's work. The scam led to Slate's lawyers' withdrawal from the case.

7. Affidavit from Police Complaint Center Board Member Professor Daniel Maier-Katkin: An affidavit from Professor Katkin, former Dean of the Penn State School of Criminology and Criminal Justice and the Florida State

University School of Criminology corroborating the operations of the Police

Complaint Center and Gregory Slate's employment.


Respectfully submitted,

/s/ Diop Kamau

Monday, July 29, 2024

9217 Hampton Glen Court

Tallahassee, FL 32312

Email: diopkamau@policeabuse.com

Phone: 850-566-7960

Plaintiff Pro Se

exhibit 1

## <u>INVESTIGATIVE DUE DILIGENCE AFFIDAVIT</u>

**United States District Court for the Northern District of Florida**

**Diop Kamau**

        Plaintiff(s),

vs.

**Gregory A. Slate**

        Defendant(s).

**Attorney: NONE**

Diop Kamau
9217 Hampton Glen Ct.
Tailahassee FL 32312



*316558*

**Case Number: 4:24-CV-207-AW/MAF**

Legal documents received by Same Day Process Service, Inc. was requested to provide an affidavit of due diligence for subject(s), Gregory A. Slate on 05/14/2024 at 3:39 PM at 35 Bryant Street NW, Washington, DC 20001

The undersigned, swear and affirm that on June 14, 2024 at 5:28 PM, I did the following:

**NON-SERVED:** After careful inquiry and diligent attempts, I was unable to serve Gregory A. Slate the Summons in a Civil Action; Complaint for Injunctive Relief and Damages for the reason(s) indicated in the comments below:

| Date/Time | Address | Remarks |
|---|---|---|
| 05/20/2024-7:50 PM | 35 Bryant Street NW Washington, DC 20001 | Upon my arrival, I noticed that the address was under renovation. The windows had no blinds, so I was able to see into the home. It appeared to be visibly vacant. I saw construction tools laying all around the home. - Attempted by Rene Pivas |
| 05/23/2024-12:31 PM | 35 Bryant Street NW Washington, DC 20001 | Gregory Slate, the subject, called and is willing to receive the documents; he is currently out of town. The best number for him is 202-907-7526. He said he would call me later while he contacts a covenant to accept the legal documents on his behalf. - Attempted by Brandon Snesko |
| 05/23/2024-6:30 PM | 35 Bryant Street NW Washington, DC 20001 | I called the provided number, (202) 907-7526. I received no answer. I then left a detailed message on his voicemail, but have not received a call back. - Attempted by Cheryl Bingaman |
| 05/24/2024-3:36 PM | 35 Bryant Street NW Washington, DC 20001 | I received a call from the subject at +1 (202) 907-7526. We have to figure out a date and time for himself/co-tenant to receive documents. The subject said the house is under construction, so nobody is there. The subject does not know when he is coming back into town. The subject has to make an appointment with the co-tenant to accept the service. - Attempted by Cheryl Bingaman |
| 06/14/2024-5:28 PM | 35 Bryant Street NW Washington, DC 20001 | I called the subject twice at (202) 907-7526 but the subject did not answer. I then left a detailed message and asked when he would like to meet to receive the documents. - Attempted by Cheryl Bingaman |

_____
**Rene Rivas**
Process Server

_____
**Brandon Snesko**
Process Server

_____
**Cheryl Bingaman**
Process Server

Internal Job ID:316558



**Same Day Process Service, Inc.**
1413 K St., NW, 7th Floor
Washington DC 20005
(202)-398-4200
info@samedayprocess.com

100024|66|   EXHIBIT 2



## Police Complaint Center

TAX ID 251734642

1220 L. Street N.W. 100-164
Washington, D.C. 20005
850-894-6819 fax 202-318-8158

**INVOICE**

| Customer | | Date | 5/2/2006 |
|---|---|---|---|
| Name | ABC 2020 | Order No. | |
| Address | | | 54 |
| City | Ft. Lauderdale   State Fla   ZIP | | |
| Phone | | | |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| 1 | Hidden Camera test for 2020 shot in Cincinatti with ABC 2 testers at 500.00 per day for each tester Story shot june 6,7,8 $1000.00 per day for 3 days | $3,000.00 | $3,000.00 |

CC: 5445358
gf: 520045
ok

| | SubTotal | $3,000.00 |
|---|---|---|
| Shipping & Handling | | $0.00 |
| Taxes | | |
| | **TOTAL** | $3,000.00 |

**Payment Details**

O  Cash
⦿  Check
O  Credit Card

Name
CC #
Expires

Office Use Only

*Please send payment to: Police Complaint Center*
*4244 West Tennessee Street, #395, Tallahassee Fla.*
*32304*

Please PAY
re "Police" - TW506   Glean Sibersi   produca
(of. # 1433233   6/20/06



# Police Complaint Center

1220 L. Street N.W. 100-164
Washington, D.C. 20005
850-894-6819 fax 202-318-8158

## ═ INVOICE ═

**Customer**

| | | | |
|---|---|---|---|
| Name | ABC NEWS | | |
| Address | | | |
| City | New York | State New Y | ZIP |
| Phone | | | |

| Date | 8/22/2007 |
|---|---|
| Order No. | |
| 54 | |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| 1 | Investigation/preproduction services for news report Producer Glenn Ruppel | $5,500.00 | $5,500.00 |
| | | SubTotal | $5,500.00 |
| | | Shipping & Handling | |
| | | Taxes | $0.00 |
| | | TOTAL | $5,500.00 |

**Payment Details**

- O Cash
- ◉ Check
- O Credit Card

Name
CC #
Expires

Office Use Only

*Please send payment to: Police Complaint Center 1400 Village Square
Commons Suite 3-161, Tallahassee Fla. 32312*

EXHIBIT 3

Diop Kamau
9217 Hampton Glen Court
Tallahassee Florida 32312
850-566-7960

Saturday, June 3, 2023

Judge Mark Walker
Chief Judge Federal District Court
United States District Court for the Northern District of Florida - Tallahassee Division
111 North Adams Street Tallahassee, FL 32301

Subject: False Statements by Attorney Janakan Thiagarajah

Dear Judge Walker,

I am writing to bring to your attention the serious misconduct of Attorney Janakan Thiagarajah during an evidentiary hearing held on May 25, 2023.

During the hearing about a Rule 11 motion for sanctions, Attorney Thiagarajah provided false responses to your inquiries regarding a material matter under review. Specifically, you repeatedly asked Attorney Thiagarajah if his client owned a YouTube account in 2020. Despite receiving proof of his client's ownership of two YouTube accounts in discovery, Attorney Thiagarajah intentionally and falsely replied, "No" or "No, not to the best of my knowledge." Attorney Thiagarajah misled the Court, as his client Gregory Slate indeed owned two YouTube accounts in 2020: one under the name Greg Slate and the other under a proxy named TPD Justice. Mr. Slate opened the first YouTube account @gslate on October 23, 2006. It remains active today and was active on the hearing date. Though it is an open account, it contains no videos. Six Police Complaint Center investigation videos were removed when I filed a copyright claim against the account. Attorney Thiagarajah received copies of the July 16, 2020, copyright removal notices.

Furthermore, Attorney Thiagarajah testified a second time falsely by claiming that his client's girlfriend, Sarah Barger, was responsible for sending an email associated with a computer hacking incident. This false testimony contradicts Ms. Barger's denial to Leon County Sheriff investigator Brandon Cutcliffe of sending the email. Attorney Thiagarajah provided this unverified and misleading account to the Court without speaking to Ms. Barger.

In addition to the false statements made during the hearing, Attorney Thiagarajah allowed his client Gregory Slate to testify falsely several times in two depositions. Considering the Court's time, I will share only one example. While Mr. Thiagarajah was present, his client Mr. Slate falsely testified under oath that he never opened or owned a bank account affiliated with the Police Complaint Center, despite a check written by him from that account, which Attorney Thiagarajah also received during discovery.

It is essential to note that Attorney Thiagarajah was aware of his client's prior disbarment for legal misconduct, including false testimony under oath, in a different federal court proceeding. Despite this knowledge, Attorney Thiagarajah failed to verify the answers provided to the Court or correct the record during the hearing. The presence of his client, Gregory Slate, via Zoom and their ongoing communication

through various channels during the hearing further illustrates Attorney Thiagarajah's knowing and active involvement in the false testimony provided.

Therefore, I respectfully request that this Court investigate the false statements made by Attorney Thiagarajah and determine appropriate measures to address this misconduct. The scope of the investigation is at your discretion. If the Court requires a formal motion made through the Clerk of Court to proceed with an inquiry, please notify me by mail, and I will enter the appropriate motion as a pro se litigant.

Thank you for your attention to this matter.

Sincerely,

Diop Kamau

EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GREGORY SLATE,

            Plaintiff,

    vs.                                    Civil Action No. 09-1761 (BAH/DAR)

AMERICAN BROADCASTING
COMPANIES, INC., ET AL.,

            Defendants.

## DECLARATION OF CHRIS HAYES

1.      I am an investigative reporter at KTVI in St. Louis, Missouri, and also held that position in 2006 and 2007. I have personal knowledge of the facts stated herein, and am competent to testify to them.

2.      In February 2007 KTVI aired news stories reported by me about an investigation into how police precincts in the vicinity of St. Louis responded to a tester who asked to file a complaint against a police officer.

3.      The idea for these stories came from KTVI's news director at the time, Kingsley Smith, who according to personnel records I have reviewed first began working at KTVI on July 17, 2006. The arrangements for the story were made with Diop Kamau of the Police Complaint Center.

4.      Gregory Slate, who I understood to be a PCC tester, came to work on the story with KTVI's staff and me. Mr. Slate first traveled to KTVI to attempt to undertake this investigation in mid-January 2007, but a snowstorm prevented us from working. Mr. Slate returned to KTVI approximately two weeks later, and the captions shown on the resulting news

{00432003;v1}                        1

stories accurately state when Mr. Slate recorded footage for these reports, on January 26-29, 2007.

5.      Mr. Slate held himself out to me to be a representative of the Police Complaint Center and I interviewed him for the news report in that capacity.  Excerpts from that interview are contained in the reports.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 31st day of August 2011 in St. Louis, Mo.

Chris Hayes

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GREGORY SLATE,

               Plaintiff,

    vs.

AMERICAN BROADCASTING
COMPANIES, INC., ET AL.,

               Defendants.

Civil Action No. 09-1761 (BAH/DAR)

## DECLARATION OF GLENN SILBER

1.      I am a freelance journalist.  In 2006, I was a producer with ABC News.  I have personal knowledge of the facts stated herein and am competent to testify to them.

2.      In 2006 ABC News, the Police Complaint Center ("PCC"), and a local ABC affiliate station in Cincinnati, WCPO, undertook to do a news investigation to test responses of local police precincts in the vicinity of Cincinnati to a person seeking to file a complaint.

3.      I negotiated the terms of ABC's arrangement with the PCC, with Diop Kamau.

4.      Under the agreement with the PCC, ABC News paid the PCC a total fee of $3,000, reflecting a fee of $500 per day for each PCC tester, plus their expenses such as airfare and hotel accommodations.  ABC owned any resulting video and was free to use it as it wished, including permitting any use by WCPO.

5.      Following the investigation conducted in June 2006, ABC News decided not to air a story because we deemed the results of the investigation to be insufficiently newsworthy.

6.      Attached as Exhibit 1 is a true and correct copy of an invoice received by ABC News from the PCC for the fee for that investigation, which ABC News paid.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this _23_th day of August 2011 in _Verona_, New Jersey.

Glenn Silber

 **Gmail**                    EXHIBIT  5

Police Abuse <kamau.pcc@gmail.com>

---

## [Copyright takedown notice] Your YouTube Account has been disabled

---

**YouTube** <no-reply@youtube.com>                                    Thu, Feb 29, 2024 at 6:43 AM
Reply-To: YouTube <no-reply@youtube.com>
To: kamau.pcc@gmail.com

## EXHIBIT 6

# GREGORY A. SLATE

**1732 West Lexington Street**
**Baltimore, MD 21223**

Phone: (410) 566-1428
Email: gslate@umd.edu

August 21, 2006

**BY US MAIL**
Michael J. Mendelsohn
ABC News
147 Columbus Avenue
New York, New York 10023

Re:    Cincinnati and Future Projects with ABC News

Dear Mike:

It was a pleasure working with you in Cincinnati recently. Although it was nice to see my work crafted into a relevant and well-produced segment for WCOP there are some important issues I would like to address before working with ABC News again. When I began working with you in Cincinnati I understood that you were a producer for John Stossel and that our intent was to produce content for a national broadcast for ABC News in conjunction with ABC's local affiliates. At the conclusion of the project you let me know that ABC News would not use my content but would reimburse me for my expenses during the project. My understanding was that ABC and its affiliates were not interested in my footage and I accepted your reimbursement proposal because I believed that my footage would retain its exclusivity and value. I was confused when WCOP proceeded to produce a story with my footage. Later I realized that I did not appreciate the distinction that you make between ABC News and WCPO, ABC's local affiliate. In the future when I am only reimbursed for expenses rather than paid for the content of my work I expect that it will be because ABC and its affiliates do not value the footage and will not later broadcast it.

I believe that this was a misunderstanding and I wish to continue what I believe could be a mutually beneficial relationship between ABC News, its affiliates, and I. In furtherance of that goal, I would like to make a few things clear. First, WCPO reported that I was the Director of the Police Complaint Center. Although I know Mr. Kamau, I am not his employee and I have recently developed concerns about being publicly associated with him and his organization. I can explain these concerns in detail if you wish to speak about it on the phone.

Second, I am an independent freelance-journalist. Any negotiations concerning footage produced by me should be handled directly with me exclusively and all payments should be made to me directly. In the future, ABC News and I should craft an explicit licensing agreement, ratified by both of us, before my footage is broadcasted.

1 of 2

In terms of compensation, I do not work for free or for expenses only. I have paid my dues as a journalist and my recent success, including receiving an Emmy Award for Investigative Journalism, have substantially elevated the value of my work. Broadcasters seek out my services because I am willing to take on significant risks and assume substantial liability so that broadcasters and their employees do not have to. Based on offers I have received and consultation with other experienced producers I know my work is worth at least six-figures if it is used in a national primetime broadcast. If I produce footage for sweeps, as we have discussed, the work is even more valuable. If ABC News wishes to proceed with any of the projects I proposed to you in Cincinnati this is the compensation I will ask for. If, in ABC's assessment, my footage does not meet expectations, I appreciate being reimbursed for expenses but expect that ABC will not subsequently use the footage I share with them, so that I may protect its exclusivity for my future use.

Lastly, and I believe this goes without saying, should ABC News and I work together in the future I must receive full credit for my footage and have my name credited as a producer on any award submissions.

I hope that this letter does not come across as hostile or terse and that you realize that I have only taken the time to write you because I do wish to work with you and ABC in the future and I believe that clearing up these issues now is the best way for us to proceed. I respect you and your organization and hope that we can continue to report important, relevant, and successful news stories together. Please provide a copy of this letter to your supervisors at ABC News, 20/20 and anyone interested in the stories I pitched to you in Cincinnati so that we are all on the same page relative to any future work. If you have any questions or concerns, please contact me at my address, number, or email address above.

Regards,

Gregory A. Slate

2 of 2

**EXHIBIT 7**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**GREGORY A. SLATE,**

      **Plaintiff,**

**v.**

**DIOP KAMAU, et al.,**

      **Defendants.**

_____/

**CASE NO.: 4:21-cv-390-MW/MJF**

## DECLARATION OF DANIEL MAIER-KATKIN PURSUANT TO 28 U.S.C. § 1746

1. My name is DANIEL MAIER-KATKIN.

2. I am over the age of eighteen and of sound mind.

3. I am executing this declaration in connection with the above-styled lawsuit.

4. I have personal knowledge of the statements contained herein.

5. I am the former Dean of the Florida State University School of Criminology and Criminal Justice. I have known Diop Kamau since 1990, when I recruited him to the Penn State University criminal justice graduate program where I was Head of the Department of Administration of Justice.

6. From 1994 to the present, I served as a board member of the Police Complaint Center. During my tenure as a board member, I developed several law enforcement training programs in collaboration with Diop Kamau

DocuSign Envelope ID: 856E8BBC-C7D8-42AB-8F9C-727058C7D9F1

Mr. Kamau and I provided training to dozens of law enforcement officers throughout Florida, including officers of the Florida Highway Patrol, the Leon County Sheriff's Office, the Collier County Sheriff's Office.

In approximately 2008, we collaborated to create an online distance training program for the Florida State School of Criminology, and the FSU distance Learning Center titled "Cops Cameras and Cyberspace."

Based on our training in prior years, we anticipated a potential revenue of $250,000 after the program was fully implemented. Unfortunately, we could not complete the program due to several cyber-attacks directed against the Police Complaint Center over several years.

On multiple occasions, Mr. Kamau came to my home to use my Wi-Fi out of fear that his computer network was compromised. He reported to me at the time he was being hacked.

From April 2000 through 2007, Gregory Slate was employed for the Police Complaint Center. Mr. Slate began as a volunteer/Intern in 2002 and later a paid tester for the Police Complaint Center from 2004-2007. Gregory Slate served as Director, and he was involved in multiple tests of law enforcement agencies across the country under the direction of Diop Kamau. Mr. Slate was terminated from the organization in December 2007.

DocuSign Envelope ID: 856E8BBC-C7D8-42AB-8F9C-727058C7D9F1

On approximately July 3rd, 2008, the entire faculty of the School of Criminology and Criminal Justice received a smear e-mail concerning Diop Kamau and the Police Complaint Center.

7. I declare under penalty of perjury that the foregoing is true and correct.

Date Executed:  12/23/2022

Signature  Daniel Maier-katkin